UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERHAT ALTIN,<br><br>Petitioner,<br><br>v.<br><br>CHRISTOPHER CHESTNUT, et al.,<br><br>Respondents. | No. 1:26-cv-00792-DC-CSK (HC)<br><br><br>ORDER GRANTING PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PETITION FOR WRIT OF HABEAS CORPUS<br><br>(Doc. Nos. 1, 5) |

This matter is before the court on Petitioner's motion for a temporary restraining order (Doc. No. 5), filed in conjunction with his petition for a writ of habeas corpus brought under 28 U.S.C. § 2241, challenging his ongoing immigration detention. (Doc. No. 1.) Respondents have agreed that Petitioner's habeas petition can be resolved together with his motion for temporary restraining order. (*See* Doc. No. 7 at 2.) Petitioner opted not to file a reply brief and thus has not affirmatively opposed the court simultaneously ruling on the habeas petition and motion for temporary restraining order. For the reasons explained below, the court will grant Petitioner's motion for a temporary restraining order and Petitioner's petition for writ of habeas corpus, and will order Petitioner's immediate release.

/////

/////

1

**BACKGROUND**

**A.     Factual Background**

Petitioner Ferhat Altin is a native and citizen of Turkey. (Doc. No. 1 at ¶ 23.) Petitioner entered the United States without inspection on or about March 19, 2023. (*Id.* at ¶ 1.) Petitioner was detained shortly after his arrival, and on March 22, 2023, was issued a notice to appear instituting removal proceedings under 8 U.S.C. § 1229a. (Doc. No. 1-1 at 21.) Petitioner was charged with being "an alien present in the United States who has not been admitted or paroled" in violation of 8 U.S.C. § 1182(a)(6)(A)(i). (*Id.*) On that same day, the U.S. Department of Homeland Security ("DHS") released Petitioner on his own recognizance pending determination of his immigration proceedings pursuant to 8 U.S.C. § 1226(a) and its implementing regulations. (Doc. Nos. 1 at ¶ 2; 1-1 at 15.) The order releasing Petitioner on his own recognizance required Petitioner to enroll and participate in an Alternatives to Detention ("ATD") program. (Doc. No. 1-1 at 15.) Since his release, Petitioner has complied with all terms of the ATD program. (Doc. No. 1 at ¶ 32.) On August 23, 2023, Petitioner applied for asylum, withholding of removal, and protection under the Convention Against Torture. (Doc. Nos. 1 at ¶ 33; 1-1 at 10.)

Since his release in 2023, Petitioner has lived in New Jersey and California with his family, for whom he is the exclusive financial provider. (Doc. Nos. 1 at ¶ 34; 1-1 at 10.)

In November 2024, Petitioner was detained by officers of the City of Berkeley Police Department and held for approximately seven hours before he was released. (Doc. Nos. 1 at ¶ 35; 1-1 at 3–4.) Petitioner's FBI criminal history record[1] indicates that Petitioner's detention was due to alleged infliction of corporal injury upon a spouse/cohabitant in violation of California Penal Code § 273.5(A), and child abuse with possible great bodily injury/death in violation of California Penal Code § 273a. (Doc. No. 7 at 9.) Alameda County Superior Court records indicate

---

[1] Respondents request that the court take judicial notice of Petitioner's FBI criminal history record pursuant to Federal Rule of Evidence 201(b)(2). (Doc. No. 7 at 2 n.2.)  Petitioner did not file an opposition to this request. The court will grant Respondents' request to take judicial notice of Petitioner's FBI criminal history record, attached as exhibit 1 to Respondents' opposition (Doc. No. 7 at 5–9). *See Dent v. Holder*, 627 F.3d 365, 371 (9th Cir. 2010) (taking judicial notice of documents in a noncitizen's A-file); *Fisher v. Planet*, No. 14-cv-04450-VBF, 2014 WL 2711737, at *1 (C.D. Cal. June 16, 2014) (taking judicial notice of FBI criminal history record).

that no charges were filed in relation to this detention. (Doc. No. 1-1 at 3–4, 58.)

On June 25, 2025, Petitioner was re-detained by U.S. Immigration and Customs Enforcement ("ICE") when he presented himself for a scheduled check-in at the ICE San Francisco Field Office. (Doc. Nos. 1 at ¶ 38; 1-1 at 11.) Petitioner was informed that he was being re-detained in relation to his detention by the Berkeley Police Department. (*Id.*) Petitioner has been in ICE detention since that date, first at Mesa Verde ICE Processing Center, and now at the California City Detention Facility in California City, California. (Doc. Nos. 1 at ¶ 39; 1-1 at 11.) Petitioner alleges that his re-detention is based on a new policy that DHS adopted on July 8, 2025 ("DHS detention policy"), which instructs ICE to consider any noncitizen[2] who entered the United States without admission or inspection as being subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), rather than discretionary detention under 8 U.S.C. § 1226 as had been DHS's policy for decades. (Doc. Nos. 1 at ¶ 40; 1-1 at 55–56.)

On July 31, 2025, Petitioner appeared with counsel for a bond hearing before an immigration judge. (Doc. No. 1 at ¶ 42.) That same day, the immigration judge denied Petitioner's request for bond, finding that the immigration judge lacked jurisdiction to consider Petitioner's request because Petitioner is subject to mandatory detention under § 1225. (Doc. Nos. 1 at ¶ 42; 1-1 at 28–29.) On August 25, 2025, Petitioner's counsel filed an appeal to the Board of Immigration Appeals challenging the immigration judge's determination that Petitioner was ineligible for bond because he is subject to mandatory detention. (Doc. Nos. 1 at ¶ 42; 1-1 at 42–43.) On September 5, 2025, the immigration judge issued a bond memorandum reiterating that Petitioner is ineligible for bond pursuant to § 1225. (Doc. Nos. 1 at ¶ 42; 1-1 at 31–40.)

On October 7, 2025, an immigration judge denied Petitioner's application for asylum, withholding of removal, and protection under the Convention Against Torture. (Doc. Nos. 1 at ¶ 43; 1-1 at 46–49.) Petitioner was ordered removed to Turkey. (*Id.*) On November 5, 2025, Petitioner's counsel filed an appeal of that order with the Board of Immigration Appeal. (Doc. Nos. 1 at ¶ 43; 1-1 at 4.) That appeal remains pending, and as of the date Petitioner filed his

---

[2] This order uses the term "noncitizen" as equivalent to the statutory term "alien." *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020).

3

habeas petition, a briefing schedule on that appeal has not been issued. (*Id.*) Thus, Petitioner does not have a final order of removal.

Petitioner remains detained at the California City Detention Center. (Doc. No. 1 at ¶ 7.)

**B.      Procedural History**

Petitioner filed his habeas petition on January 29, 2026, asserting the following claims for relief against Respondents Christopher Chestnut, Sergio Albarran, Todd M. Lyons, Kristi Noem, and Pam Bondi: (1) violation of procedural due process; (2) violation of the Immigration and Nationality Act; and (3) violation of substantive due process. (Doc. No. 1 at 31–32.) In his petition, Petitioner seeks an order (i) enjoining Respondents from transferring Petitioner outside the jurisdiction of the Eastern District of California pending resolution of his claim; (ii) requiring Petitioner's immediate release from Respondents' custody on the same conditions of his prior order of release; (iii) in the alternative, requiring that within 21 days, Respondents provide Petitioner with an individualized hearing before a neutral adjudicator to determine whether the government may justify his continued detention; and (iv) awarding Petitioner reasonable attorney's fees and costs. (*Id.* at 32–33.)

On January 30, 2026, Petitioner filed the pending motion for a temporary restraining order requesting the same relief sought by his habeas petition. (Doc. No. 5-1 at 31.)

On January 31, 2026, the court issued an order setting the briefing schedule on Petitioner's motion for a temporary restraining order, directing Respondents to address whether this case is materially distinguishable from previous orders[3] issued by this court considering substantially similar legal issues, and directing both parties to indicate whether they oppose the court considering Petitioner's habeas petition contemporaneously with his motion for a temporary

---

[3] Specifically, the court directed Respondents to "substantively address whether there are any factual or legal issues in this case that materially distinguish it from the court's prior orders" in *Selis Tinoco v. Noem,* 1:25-cv-01762-DC-JDP, 2025 WL 3567862 (E.D. Cal. Dec. 14, 2025), *Labrador-Prato v. Noem,* 1:25-cv-01598-DC-SCR, 2025 WL 3458802 (E.D. Cal. Dec. 2, 2025), and *D.L.C. v. Wofford,* 1:25-cv-01996-DC-JDP, 2026 WL 25511 (E.D. Cal. Jan. 5, 2026), because those orders addressed the legal issues raised by Petitioner in Count One of his petition. (Doc. No. 6.) In those decisions, the court granted motions for a temporary restraining order based on the petitioner's likelihood of success on the merits of their due process claims.

4

restraining order. (Doc. No. 6.)

On February 3, 2026, Respondents filed an opposition indicating that they opposed Petitioner's motion for a temporary restraining order but supported the court ruling on Petitioner's habeas petition contemporaneously with that motion. (Doc. No. 7 at 2.) In their response, Respondents acknowledge that "there appears to be no substantive distinctions between this case and [*Selis Tinoco*, *Labrador-Prato*, and *D.L.C.*]," other than Petitioner's "prior arrest on serious state criminal charges," (Doc. No. 7 at 2), which the court addresses below. Petitioner opted not to file a reply brief.

**LEGAL STANDARD**

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); see also *Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) ("[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order.").

**DISCUSSION**

**A.    Statutory Framework**

Petitioner argues he is unlawfully detained because he has not received a bond hearing before a neutral adjudicator, a procedure which he contends he is statutorily entitled to under 8 U.S.C. § 1226(a). (Doc. No. 5-1 at 24.) Respondents argue Petitioner is not entitled to a bond

hearing because he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2), which does not provide for bond hearings. (Doc. No. 7 at 1.)

The complex statutory framework governing the detention and removal of inadmissible noncitizens in this country is at issue here. Sections 1225 and 1226 govern the detention of inadmissible noncitizens who have been placed in removal proceedings. 8 U.S.C. §§ 1225, 1226. Section 1226(a) is the "usual removal process" for inadmissible noncitizens. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). The noncitizen's removal commences with the filing of a Notice to Appear with the Immigration Court, initiated under 8 U.S.C. § 1229(a). *Ortiz Donis v. Chestnut*, No. 25-cv-01228-JLT-SAB, 2025 WL 2879514, at *3 (E.D. Cal. Oct. 9, 2025). The removal process provides for an evidentiary hearing before an immigration judge to allow the noncitizen to show they should not be removed. *Thuraissigiam*, 591 U.S. at 108. The noncitizen is also permitted to apply for asylum if they would be persecuted if returned to their home country. *Id.* (citing 8 U.S. § 1229a(b)(4); 8 C.F.R. § 1240.11(c)). If asylum is not granted, and the noncitizen is ordered removed, they can appeal the order to the Board of Immigration Appeals. *Id.* (citing 8 U.S. §§ 1229a(c)(5), 1252(a)).

Section 1226 provides a discretionary detention scheme while removal proceedings are pending, i.e., before there is a final removal order. 8 U.S.C. § 1226. Specifically, during the pendency of removal proceedings, the government may continue to detain the individual or may release them on bond or conditional parole. 8 U.S.C. § 1226(a)(2)(A)-(B). When a noncitizen is apprehended under § 1226, an ICE officer makes an initial custody determination, and the noncitizen will be released upon a showing "to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding." *Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing 8 C.F.R. § 236.1(c)(8)). If the noncitizen is detained under § 1226(a), they are entitled to a bond hearing. *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018).

As to noncitizens seeking admission into the United States, § 1225 provides for mandatory detention of certain individuals and, in some cases, expedited removal. 8 U.S.C. § 1225; *see also Ortiz Donis*, 2025 WL 2879514, at *4 ("While '§ 1226 applies to aliens already

present in the United States,' U.S. immigration law also 'authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2),' a process that provides for expedited removal.") (citing *Jennings*, 583 U.S. at 303.) Section 1225(b)(2)(A) provides:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.[4]

An applicant for admission is defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)." 8 U.S.C. § 1225(a)(1).

Until this year, DHS has "applied [§] 1226(a) and its discretionary release and review of detention to the vast majority of noncitizens allegedly in this country without valid documentation." *Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC, 2025 WL 2637503, at *3 (N.D. Cal. Sep. 12, 2025). On July 8, 2025, however, DHS issued a memo to all employees of ICE stating that it had revisited its legal position on detention and release authorities and that § 1225 "is the applicable immigration detention authority for all applicants for admission." (Doc. No. 1-1 at 55–56.) Following this development, DHS began directing federal immigration officials to seek expedited removal of noncitizens pursuant to § 1225(b)(2). *Garcia v. Noem*, No. 25-cv-02180-DMS-MMP, 2025 WL 2549431, at *5 (S.D. Cal. Sept. 3, 2025); *Salcedo Aceros*, 2025 WL 2637503, at *4.

In alignment with this policy shift, the Board of Immigration Appeals found in September 2025 that noncitizens who "surreptitiously cross into the United States remain applicants for admission until and unless they are lawfully inspected and admitted by an immigration officer," and therefore immigration judges "have no authority to redetermine the custody of" such

---

[4] Subparagraph (B) of 8 U.S.C. § 1225(b)(2) sets forth exceptions to subparagraph (A). Subparagraph (C) of the same section addresses the [treatment] of [noncitizens] arriving from contiguous territory." 8 U.S.C. § 1225 b)(2)(C). Neither subparagraph appears to apply here.

7

noncitizens, even if the noncitizens have resided in the United States for an extended period of time. *Matter of Yajure Hurtado*, 29 I&N 216, 228 (BIA 2025). Since *Hurtado* was issued, immigration judges have consistently denied noncitizens' requests for custody redeterminations such as Petitioner's, finding that the immigration court does not have jurisdiction to reconsider the noncitizens' mandatory detention. *See, e.g., Chavez v. Noem*, 801 F. Supp. 3d 1133, 1139 (S.D. Cal. 2025) (waiving prudential administrative exhaustion requirement of noncitizen challenging denial of bond request because it "seems clear that anyone deemed admissible under § 1182(a)(6)(A)(i) . . . will be subjected to mandatory detention without bond under 1225(b)(2) upon [Board of Immigration Appeals] review.").

In their opposition, Respondents reiterate the government's position that § 1225 applies broadly to all noncitizens, including Petitioner, who entered the United States without admission, and therefore Petitioner, as "an applicant for admission . . . is subject to mandatory detention [under § 1225] and thus ineligible for a bond hearing." (Doc. No. 7 at 3.) However, the legal arguments Respondents rely upon to support the government's position that § 1225 applies here have been consistently rejected by a majority of courts in this district and courts across the country. *See Solomun-Gebremadhen v. Vasquez*, No. 1:26-cv-00237-JLT-EPG, 2026 WL 276, at *3 (E.D. Cal. Feb. 3, 2026) (collecting cases). Instead, those courts, including this court, have generally held that § 1226 rather than § 1225 is the appropriate section to apply in cases in which a noncitizen is already living in the United States. *See C.A.R.V. v. Wofford*, No. 25-cv-01395-JLT-SKO, 2025 WL 3059549, at *8 (E.D. Cal. Nov. 1, 2025) (finding § 1226 applied when "petitioner ha[d] been present in the United States for approximately four years and was released on his own recognizance well before Respondents adopted the new interpretation of the governing statutes"); *see Bernardo Aquino v. Larose*, No. 25-cv-02904-RSH-MMP, 2025 WL 3158676, at *3 (S.D. Cal. Nov. 12, 2025) ("The overwhelming majority of courts to address the issue have agreed that Section 1226(a), rather than the mandatory detention provision of Section 1225(b)(2)(A), applies to a noncitizen . . . who has resided in the United States for many years.") (citing cases).

As Respondents concede, the "weight of authority" rejects the government's new

interpretation of § 1225 as the applicable immigration detention authority for all inadmissible noncitizens. (Doc. No. 7 at 2.) Indeed, Petitioner's initial release on his own recognizance was explicitly authorized under section 236 of the INA, that is—§ 1226. (Doc. No. 1-1 at 15) ("In accordance with section 236 of the Immigration and Nationality Act [§ 1226] . . . you are being released on your own recognizance provided you comply with the following conditions."). "Having elected to proceed with full removal proceedings under § 1226, Respondents cannot now reverse course and institute § 1225 expedited removal proceedings." *Clavijo v. Kaiser*, No. 25-cv-06248-BLF, 2025 WL 2419263, at *4 (N.D. Cal. Aug. 21, 2025). Accordingly, Petitioner is subject to the discretionary detention scheme set forth in § 1226.

**B.    Due Process**

Respondents contend the failure to provide Petitioner a bond hearing does not constitute a violation of due process because Petitioner cannot establish a statutory right to a bond hearing, and therefore he does not maintain a liberty interest in his continued release. (Doc. No. 7 at 3.) However, as noted above, Petitioner has a statutory right to a bond hearing under § 1226. Moreover, Petitioner's present detention violates his due process rights under the Fifth Amendment.

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. It is firmly established that these protections extend to noncitizens present in the United States. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); *Wong Wing v. U.S.*, 163 U.S. 228, 238 (1896) ("It must be concluded that all persons within the territory of the United States are entitled to the protection guarantied by [the Fifth Amendment], and that even aliens shall not . . . be deprived of life, liberty, or property without due process of law.").

Courts examine procedural due process claims in two steps. *Berrios v. Albarran*, No. 25-cv-01544-TLN-CSK, 2025 WL 3171140, at *2 (E.D. Cal. Nov. 13, 2025) (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). The first step asks whether a protected liberty

9

interest under the Due Process Clause exists. *Id*. The second step "examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Id*.

The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary. *See Zadvydas*, 533 U.S. at 693. Since Petitioner has a protected liberty interest, the court must determine the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. To make that determination, the court applies the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Diaz*, 53 F. 4th at 1206–07 (applying the *Mathews* test to a procedural due process challenge to a detention under 8 U.S.C. § 1226, explaining that "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context"); *see also Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context). The *Mathews* test considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest. 424 U.S. at 335.

Turning to the first *Mathews* factor, Petitioner has a private interest in remaining free from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner was out of custody for over two years prior to his re-detention. (Doc. No. 5-1 at 11.) During that time, Petitioner was granted work authorization, and has maintained employment as the exclusive financial provider for his family, including his U.S. citizen son. (*Id*.) Further, Petitioner attaches as exhibits to his habeas petition numerous letters from his family, friends, and neighbors, attesting to Petitioner's value as a treasured community member. (Doc. No. 1-1 at 62–77.) Petitioner also abided by all the terms of his order of release on recognizance and pursued his petition for asylum, withholding of removal, and protection under the Convention Against Torture. (Doc. No. 5-1 at 11.) The length of time and the connections Petitioner made with his community during that period create a powerful interest for Petitioner in his continued liberty. *See Doe v Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025). Thus, consideration of

10

this factor favors a finding that Petitioner's private interest has been affected by his detention.

The second *Mathews* factor, the risk of erroneous deprivation to Petitioner, also weighs in Petitioner's favor. *See A.E. v. Andrews*, No. 25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) ("The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing."). Civil immigration detention is "nonpunitive in purpose and effect" and is justified when a noncitizen presents as a danger to the community or risk of flight. *Zadvydas*, 533 U.S. at 690; *Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023).

Petitioner has been detained for over seven months without being provided a bond hearing before an immigration judge to evaluate his dangerousness and/or flight risk. (Doc. No. 1 at ¶ 97.) Although Respondents highlight in their opposition that Petitioner "was arrested by [the] Berkeley Police Department" and argue that this "prior arrest on serious state criminal charges" distinguishes Petitioner's claim from others where this court has found a noncitizen is entitled to release after being re-detained without a bond hearing (Doc. No. 7 at 1, 2), no neutral arbiter under § 1226 has determined whether those facts show that Petitioner is a flight risk or danger to the community. *See Selis Tinoco v. Noem,* 1:25-cv-01762-DC-JDP, 2025 WL 3567862 (E.D. Cal. Dec. 14, 2025) (granting release of a petitioner who had been arrested for driving under the influence because no neutral arbiter at a bond hearing under § 1226 has determined that the DUI arrest shows the petitioner is a danger to the community); *cf. Rodriguez Diaz v. Kaiser*, No. 25-cv-05071-TLT, 2025 WL 3011852, at *11 (N.D. Cal. Sept. 16, 2025) ("If Respondents wish to establish that re-detention is warranted by raising the effect of . . . Petitioner-Plaintiff's six alleged bond violations, a hearing before a neutral adjudicator provides a forum to do so."); *see also Cajina*, 2025 WL 3251083, at *1, 6 (ordering petitioner's immediate release and enjoining and restraining respondents from re-detaining petitioner absent a pre-detention hearing, despite petitioner being charged with driving under the influence); *Nolasco-Gomez v. Noem*, No. 25-cv-02217-RFB-DJA, 2025 WL 3514758 (D. Nev. Dec. 8, 2025) (ordering petitioner's immediate release and enjoining and restraining respondents from re-detaining petitioner absent a pre-detention hearing, despite petitioner being arrested for driving under the influence). Thus, the

11

court concludes "the probable value of additional procedural safeguards" including a bond hearing before Petitioner was detained is high. *A.E.*, 2025 WL 1424382, at \*5.

Turning to the third *Mathews* factor, the court acknowledges the government has an interest in the steady enforcement of its immigration laws but recognizes that the government's interest in detaining Petitioner without any procedural protections is substantially "low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025). Custody hearings in immigration court are routine and impose a "minimal" cost on the government. *Doe*, 787 F. Supp. 3d at 1094. "If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without [any procedural protections] is low." *Ortega*, 415 F. Supp. 3d at 970.

On balance, the *Mathews* factors favoring Petitioner show that due process requires that Petitioner is provided a bond hearing prior to his re-detention. Respondents point to no reasons why a pre-deprivation hearing could not be held, and provide no evidence of "urgent concerns," warranting Petitioner's re-detention without a hearing, thus, "a pre-deprivation hearing is required to satisfy due process." *Guillermo M.R.*, 791 F. Supp. 3d at 1036.

Accordingly, the court will grant Petitioner's motion for a temporary restraining order (Doc. No. 5) and grant Petitioner's habeas petition as to Count One.[5]

**CONCLUSION**

For the reasons explained above,

1.      Petitioner's motion for a temporary restraining order (Doc. No. 5) is GRANTED;

2.      Respondents' request for judicial notice (Doc. No. 7 at 2 n.2) is GRANTED;

3.      Petitioner's petition for writ of habeas corpus (Doc. No. 1) is GRANTED, as

---

[5] Because the court is granting the petition on the due process claim (Count One), the court need not address any additional grounds raised in the petition. *See N.K. v. Noem*, No. 1:26-cv-00292-KES-SAB (HC), 2026 WL 130345, at \*1 (E.D. Cal. Jan. 16, 2026) (granting habeas petition as to the second count of the petition and not addressing other counts because the petitioner was entitled to the relief sought based on the court's ruling as to that second count); *Constantinovici v. Bondi*, No. 3:25-cv-02405-RBM-AHG, 2025 WL 2898985, at \*7 (S.D. Cal. Oct. 10, 2025) (granting habeas petition based on due process claim and "declin[ing] to address the remaining grounds in the Petition for seeking release"). Indeed, Petitioner is entitled to the habeas relief he seeks based on the court's ruling as to Count One.

follows:

    a.    Respondents shall release Petitioner immediately with the same conditions he was subject to immediately prior to his detention on June 25, 2025;

    b.    Respondents are ENJOINED AND RESTRAINED from re-detaining Petitioner unless they provide 7 days' notice to Petitioner and a pre-deprivation bond hearing before a neutral arbiter pursuant to 8 U.S.C. § 1226(a) and its implementing regulations, at which Petitioner's eligibility for bond must be considered; and

4.    The Clerk of the Court is directed to enter judgment for Petitioner and close this case.

IT IS SO ORDERED.

Dated:   **February 5, 2026**                           _____

Dena Coggins
United States District Judge

13